# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| HEATHER M. and ANGEL L. OTERO | : | CASE NO. 10-41071-MSH |
| DEBTORS | : | |
| In re | : | Chapter 7 |
| JOLENE M. RAMALHO | : | CASE NO. 10-41073-MSH |
| DEBTOR | : | |
| In re | : | Chapter 7 |
| TIMOTHY J. WADE | : | CASE NO. 10-41074-MSH |
| DEBTOR | : | |
| In re | : | Chapter 7 |
| MICHELE J. CHAPDELAINE | : | CASE NO. 10-41092-MSH |
| DEBTOR | : | |

**MEMORANDUM OF DECISION ON MOTIONS TO EXAMINE DEBTORS' TRANSACTIONS WITH COUNSEL AND FOR ORDERS REQUIRING COUNSEL TO DISGORGE ALL COMPENSATION**

John P. Fitzgerald, III, Acting United States Trustee ("UST"), filed identical motions in each of the above cases pursuant to 28 U.S.C. § 586(a)(3), 11 U.S.C. § 105, 307, and 329(b), and Fed. R. Bankr. P. 2016 and 2017 requesting an examination of the transactions between each debtor and Christopher Uhl, who represented each

debtor, and an order requiring Mr. Uhl to disgorge all compensation paid to him by each debtor due to his failure to accompany the debtors to the meeting of creditors under 11 U.S.C. § 341.[1] Mr. Uhl filed identical objections to each motion stating, among other things, that he had arranged for his paralegal, a second year law student, "to sit at the 341 Meeting, check client ID's and explain the process to the client before the Meeting." I held a hearing on the motions on June 10, 2010. Neither Mr. Uhl nor anyone representing him appeared.

Heather Otero, Michele Chapdelaine, and Timothy Wade, three of the debtors whom Mr. Uhl failed to accompany to their § 341 meetings, were in attendance at the hearing and testified concerning Mr. Uhl's representation. Each debtor testified to receiving a telephone call from Mr. Uhl's office the day before the scheduled § 341 meeting with instructions as to when and where to meet Mr. Uhl the next day. Each debtor testified to being told by Mr. Uhl or one of his employees of the importance of the § 341 meeting and to being warned that if the debtor failed to appear, he or she would owe Mr. Uhl an additional $500. Ms. Otero testified that when she arrived at the § 341 meeting Mr. Uhl was not in attendance; instead she was met by a woman who introduced herself as Mr. Uhl's partner. Ms Chapdelaine testified that when she arrived at the § 341 meeting she was met by Mr. Uhl's paralegal. She also testified that in the entire course of her representation by Mr. Uhl she met him once for approximately ten minutes. Mr. Wade, who testified he *never* met Mr. Uhl, also stated that when he arrived at the 341 meeting Mr. Uhl was a no-show and he was met instead by a woman who identified herself as Mr. Uhl's associate. In the testimony of these debtors the

---

[1] The UST filed an identical motion in *In re Annette L. Doherty*, Chapter 7 Case No. 10-41070-HJB.

consistent refrain was one of surprise and indignation at Mr. Uhl's failure to accompany them to their trustee examination.

According to the Statements of Compensation, signed and filed by Mr. Uhl pursuant to Fed. R. Bankr. P. 2016(b) in each of the above-captioned cases, he was paid between $1,001 to $1,501 for legal services plus $299 for the filing fee.[2] Paragraph 6 of each of the Statements of Compensation provides:

> In return for the above-disclosed compensation, I have agreed to render legal service for all aspects of the bankruptcy case, including …
>
> c.  Representation of the debtor at the meeting of creditors….

The § 341 meeting is most often a debtor's first exposure to the public face of the bankruptcy process and to the adversarial forces potentially arrayed against her.  Much depends on her performance before a sober and probing trustee and sometimes hostile creditors. The § 341 meeting is the crucible in which the months or years of the debtor's financial and emotional hardship are fused into a final cathartic event.  The debtor is often distracted by nerves and fear.  She thus has every reason to expect a knowledgeable and zealous ally at her side.  This is where the bankruptcy lawyer earns his fee.

The Rules of Professional Conduct of the Massachusetts Supreme Judicial Court, which apply to attorneys practicing in federal as well as state court, require, among other things, that a lawyer provide *competent* representation, Rule 1.1, and that he not assist another in the unauthorized practice of law.  Rule 5.5.  Fed. R. Bankr. P.

---

[2] The Oteros paid Mr. Uhl $1,501; Ms. Chapdelaine paid him $1,201.  The other debtors each paid him $1,001.

3

9010(a) also restricts the role a non-lawyer may play in a bankruptcy case to either *pro se* representation or acts "not constituting the practice of law."

> [A] professional, practicing bankruptcy law, cannot apply a high level of knowledge and skills unless he has some contact, and first meets, with the client to determine the client's needs and explains what action, if any, is required and its effects. Reviewing papers prepared by a secretary from information supplied by a client to a secretary is not sufficient, as the high level of knowledge and skills is not present when the questions are asked. The secretary may or may not ask the right questions. Furthermore, if a problem exists, the secretary may not recognize it as such. If the secretary did so, the secretary cannot advise the client, as that would constitute the practice of law.
>
> Nor can an attorney apply his professional knowledge and skills without attending the first meeting of creditors. By filing the petition in bankruptcy, the attorney sets in motion a series of events, including the first meeting of creditors, which exposes a layperson to a potential plethora of legal hurdles. The layperson will be exposed to questioning by a professional trustee and attorneys representing creditors. The layperson may be asked to take certain actions. In response, the layperson, acting out of ignorance or feeling that there was no need for an attorney to represent him, may say or do something to his or her detriment. Having initiated the process, an attorney must shepherd the client through it, to its conclusion.

In re Bancroft, 204 B.R. 548, 551-52 (Bankr. C.D. Ill. 1997).

Mr. Uhl abandoned his clients at the moment they needed him most. In the process he misled them by creating the expectation that he would be present at their §341 meetings and by sending in his place a non-lawyer employee, who, in at least two instances, created the false impression that she was a lawyer. Mr. Uhl violated ethical and bankruptcy rules. The debtors were right to be indignant. Mr. Uhl's conduct is an embarrassment to the conscientious members of the bankruptcy bar who take seriously their duties to the public. It is an affront to the court, which, in the public mind, symbolizes the bankruptcy process.

      The UST's motions are allowed. Mr. Uhl shall immediately refund to each debtor the full amount of all fees, including court filing fees, paid to him by each debtor. Separate orders shall issue.

Dated: June 18, 2010

                              Melvin S. Hoffman

                              United States Bankruptcy Judge